**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laura Bradley, | No. CV-18-00611-TUC-MSA |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Laura Bradley filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security. (Doc. 1.) Before the Court are Bradley's opening brief, the Commissioner's response brief, and Bradley's reply brief. (Docs. 21, 24, 25.) For the following reasons, the Court will remand for an immediate award of benefits.

## Background

### I.  Procedural History

Bradley applied for disability insurance benefits on December 9, 2015, claiming a disability onset date of February 1, 2014. **AR 103–04.**[1] Bradley later amended her alleged onset date to October 8, 2014. **AR 310.** Her application was denied on May 13, 2016, and again on reconsideration on December 1, 2016. **AR 144, 149.** On March 9, 2017, Bradley requested a hearing before an administrative law judge ("ALJ"). **AR 157.** At the hearing, held on August 27, 2018, Bradley testified about her medical conditions and past work,

---
[1] "AR" refers to the Certified Administrative Record.

and a Vocational Expert ("VE") testified about which jobs a hypothetical person with Bradley's characteristics can perform. **AR 29–55.** On September 13, 2018, the ALJ issued a written decision finding Bradley not disabled and denying benefits. **AR 7–23.** On October 29, 2018, the Appeals Council denied review. **AR 1–3.** Bradley now seeks judicial review of the ALJ's decision denying benefits. (Doc. 1.)

## II. Factual Background

### A. Bradley's Personal History and Medical Conditions

Bradley has a history of scoliosis, fibromyalgia, acid reflux disease, posttraumatic stress disorder, depression, anxiety, and alcohol-substance addiction disorder. *See* **AR 239, 250, 436.** She has a history of suicidal ideations and has attempted suicide on several occasions, the most recent attempt occurring in September 2015 by drug overdose. **AR 344.** Bradley has had several traumatic experiences throughout her adult life: her second husband committed suicide; her third husband died of a heart attack on their honeymoon; and she was drugged and gangraped on video by her boyfriend and his friends while on a trip in Mexico. **AR 738.**

Bradley worked in the medical field until 2012. **AR 267.** She was a staff nurse from 1999 to 2006, a supervising nurse from 2007 to August 2009, and a hospital administrator from December 2009 to March 2012. **AR 267.** In these positions, Bradley worked extensive hours, ranging from 8 to 16 hours per shift, almost all of which she spent standing and walking. **AR 268–70.** Bradley estimated that she saw between four and five hundred people die, which has had a negative effect on her mental condition. **AR 74.** She quit working due to her conditions. **AR 239.**

### B. Medical-Opinion Evidence

On February 8, 2016, treating physician Dr. Gail McDonald completed a physical residual functional capacity ("RFC") assessment. Dr. McDonald opined, among other things, that Bradley can stand for two hours or less per eight-hour workday, walk less than two blocks before needing to rest, occasionally lift and carry a maximum of 20 pounds, and never lift and carry more than 20 pounds. **AR 611.** Dr. McDonald qualified her

checkbox opinions in the narrative portion of the form: "I don't see [Bradley] regularly so it's hard for me to be definite." **AR 611.**

On November 10, 2016, examining physician Dr. Jeri Hassman saw Bradley in connection with her application for benefits. **AR 927–30.** The physical examination of Bradley was unremarkable, save for "an obvious scoliosis" which did not prevent Bradley from reaching her fingertips to ankle level without complaint. **AR 929.** Dr. Hassman diagnosed Bradley with "[a]llegation[s] of fibromyalgia," "[h]istory of scoliosis," and "[h]istory of depression and suicide attempts." **AR 930.** Dr. Hassman opined that none of Bradley's conditions would cause any limitations for 12 continuous months. **AR 930.**

At the reconsideration level, Dr. Jon Nordlicht opined whether Bradley has any somatic impairments. **AR 131.** Dr. Nordlicht noted that the consultative examination by Dr. Hassman "was essentially normal" and that Bradley's "x-rays show minimal findings." **AR 131.** Dr. Nordlicht thus agreed that Bradley has no somatic impairments. **AR 131.**

### III. Hearing

At her hearing, Bradley testified that she is incapable of her past work as a registered nurse because she cannot stand for even half of a workday. **AR 43–44.** She testified that she has scoliosis, which causes back pain. **AR 38–39.** She testified that she can lift 30 pounds but not carry that weight even a short distance. **AR 37–38, 44.** She reported that, for a three-month period in which her daughter was in rehab, she was solely responsible for taking care of her granddaughter, the household pets, and the home. **AR 39–40.** She stated that she experienced increased stress during that period. **AR 47.** After her daughter returned and started working, Bradley began watching her granddaughter from approximately 6:30 a.m. to 5:00 p.m. **AR 40–41.**

Regarding her mental symptoms, Bradley reported that she still struggles with depression, although it is controlled with medication and she no longer has suicidal ideations. **AR 45–46.** She testified that she experiences "seasonal depression" approximately two times per year, near the anniversaries of her husbands' deaths. **AR 46–47.** She reported that these bouts of depression last approximately one month. **AR 47.**

She further reported that her anxiety becomes so bad at times that she cannot leave the house. **AR 48–49.**

The VE classified Bradley's hospital-administrator job as light work and Bradley's nursing job as medium work, but opined that Bradley actually performed both as light work. **AR 50.** The ALJ asked the VE about a hypothetical claimant with Bradley's age, education, and work history who could perform medium work with the following mental limitations: the claimant can understand, remember, and carry out simple two-step tasks; maintain concentration, persistence, and pace for up to four hours with customary work breaks; adapt to simple and routine changes, travel, and respond to hazards; and work in an environment requiring up to frequent (as opposed to constant) superficial interaction with the public and coworkers. **AR 51.** The VE testified that the hypothetical claimant could not perform Bradley's past work. **AR 51.** According to the VE, however, the hypothetical claimant could perform other unskilled medium work in the national economy, including hand packager, laboratory-equipment cleaner, and linen clerk. **AR 51–52.**

### IV. ALJ Decision

The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. **AR 11–23.** At step one, the ALJ found that Bradley was not engaged in "substantial gainful activity." **AR 12.** At step two, the ALJ found that Bradley has four "severe" impairments: anxiety disorder, affective disorder, alcohol-substance addiction disorder, and personality disorder. **AR 12.** The ALJ found that Bradley's fibromyalgia and scoliosis are "non-severe" physical impairments. **AR 12–14.** At step three, the ALJ found that Bradley does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. **AR 14–15.**

Between steps three and four, the ALJ found that Bradley has the RFC to perform, with some mental limitations, the full range of work at all exertional levels. **AR 15.** The ALJ found that Bradley has the following limitations: she can understand, remember, and

carry out a two-step command involving simple instructions; sustain concentration, persistence, and pace for up to four hours with customary work breaks; adapt to simple and routine changes, travel, and respond to hazards; and work in an environment with frequent (as opposed to constant) superficial interaction with the public and coworkers. **AR 15–16.** In determining Bradley's RFC, the ALJ found that Bradley's statements about her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." **AR 16.** The ALJ gave "no weight" to Dr. McDonald's RFC assessment because it was "not supported by objective findings" and because Dr. McDonald conceded having a "limited relationship" with Bradley. **AR 21.** The ALJ gave "great weight" to the opinions of the non-examining agency physicians because they "are well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act," and they "reviewed the medical evidence of record." **AR 21.**

At step four, the ALJ found that Bradley cannot perform her past relevant work. **AR 21–22.** At step five, the ALJ, considering Bradley's age, education, work experience, and RFC, found that Bradley could have performed other work prior to her date last insured, and, therefore, that she is not disabled. **AR 22–23.**

## Legal Standard

A person is "disabled" within the meaning of the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "When considering a claim for disability benefits, the Social Security Administration is required to conduct a now-familiar five-step sequential evaluation process to determine whether a claimant is disabled and eligible for benefits." *Shaibi v. Berryhill*, 883 F.3d 1102, 1106 (9th Cir. 2017). The claimant bears the burden of proof at steps one through four; the Commissioner bears the burden at step five. *Barnes v. Berryhill*, 895 F.3d 702, 703 n.3 (9th Cir. 2018) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).

At the first step, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If yes, the ALJ will find the claimant not disabled. *Id.* At the second step, the ALJ considers whether the claimant has a "severe" physical or mental impairment, or a combination of impairments that is "severe," that has lasted at least one year. *Id.* §§ 404.1520(a)(4)(ii), 404.1509. If not, the ALJ will find the claimant not disabled. *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ considers whether the claimant's impairments meet or equal one of the medical conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If yes, the ALJ will find the claimant disabled. *Id.*

If the ALJ does not find the claimant disabled at the third step, before proceeding to the fourth step, the ALJ will determine the claimant's RFC—i.e., what the claimant can still do despite her limitations. *See Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017); 20 C.F.R. § 404.1545(a)(1). At the fourth step, the ALJ considers whether the claimant has the RFC to perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). If yes, the ALJ will find the claimant not disabled. *Id.* At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience and determines whether the claimant "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If yes, the ALJ will find the claimant not disabled; if not, the ALJ will find the claimant disabled. *Id.*

The ALJ's decision to deny disability benefits is subject to harmless-error review, *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)) and must be affirmed "unless it is not supported by substantial evidence or is based on a legal error," *Wellington v. Berryhill*, 878 F.3d 867, 871 (9th Cir. 2017) (citing *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010)). "Substantial evidence 'is more than a mere scintilla,' but less than a preponderance." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018) (quoting *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam)). "A reviewing court may only consider the reasons provided by the ALJ in the disability determination and 'may not affirm the ALJ on a ground upon which he did not rely.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)).

# Discussion

## I. Evaluation of Social Security Listings

Bradley contends the ALJ erred in summarily concluding that she does not satisfy the "C criteria" of Social Security listings 12.04 (for depressive disorders) and 12.06 (for anxiety disorders). For the following reasons, substantial evidence does not support the ALJ's step-three finding.

### A. Legal Principles

At step three, the ALJ considers whether the claimant has an impairment or combination of impairments that satisfies the durational requirement and meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If yes, the claimant is presumptively disabled. *Id.*; *see Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis*, 236 F.3d at 512.

In determining whether a claimant with a mental impairment meets one of the listings, the ALJ must follow the "special" evaluation technique set forth in 20 C.F.R. § 404.1520a. Under this technique, the ALJ must first consider whether the claimant has a medically documented history of the mental disorder (the "A criteria"), and whether and to what extent the disorder functionally limits the claimant (the "B criteria" and the "C criteria"). *Id.* § 404.1520a(b)–(c). To meet or equal listing 12.04 or 12.06, a claimant must satisfy either the A and B criteria, or the A and C criteria. 20 C.F.R. Part 404, Subpart P, App. 1, §§ 12.04, 12.06.

### B. Analysis

The ALJ's decision contains no mention of the A criteria for listings 12.04 and 12.06. *See* **AR 14–15.** However, the ALJ appears to have assumed that Bradley meets the A criteria, as an analysis of the B and C criteria would otherwise be unnecessary. The ALJ began by evaluating the four areas of mental functioning specified in the B criteria. **AR**

**14–15.** After discussing each area separately, with relevant citations to Bradley's medical records, the ALJ found that Bradley had not satisfied the B criteria. **AR 14–15.** The ALJ then addressed the C criteria, as follows: "The undersigned has also considered whether the 'paragraph C' criteria were satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." **AR 15.**

Bradley does not challenge the ALJ's analysis of the B criteria. However, she argues that the ALJ erred in failing to explain why she does not meet the C criteria. She is correct: At step three, the ALJ must provide more than a "boilerplate finding" that the claimant does not meet a listing. *Lewis*, 236 F.3d at 512. The ALJ's single, unreasoned sentence is precisely that—a boilerplate finding. The ALJ failed to discuss a single piece of medical evidence relating to the C criteria, or even to set forth what the C criteria are. *See* **AR 15.** This lack of discussion or findings makes it impossible for a reviewing court to determine how the ALJ reached her conclusion and whether that conclusion is free from error. As such, substantial evidence does not support the ALJ's decision. *See Lewis*, 236 F.3d at 512; *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (holding that the ALJ's "statement that Marcia did not equal the listing was insufficient").

The Commissioner argues the ALJ properly relied on the uncontroverted opinions of the state-agency psychologists, who found that Bradley's impairments do not meet or equal any listing, and on evidence indicating that Bradley does not meet the C criteria. There are two flaws in the Commissioner's argument. First, the ALJ adopted only the agency physicians' RFC assessments, not their determinations that Bradley does not meet or equal a listing. *See* **AR 21.** Second, the ALJ addressed much of this evidence at step four, not at step three. *See* **AR 16–21.** The ALJ did not purport to incorporate later findings into her step-three determination. Moreover, the ALJ could not do so, as the five-step evaluation process must be applied in sequence. 20 C.F.R. § 404.1520(a)(4) ("The sequential evaluation process is a series of five 'steps' that we follow in a set order. . . . If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step." (emphasis added)). Therefore, the ALJ's

later analysis and findings at step four do not retroactively support the determination at step three. *See Burrell v. Colvin*, 775 F.3d 1133, 1137–38 (9th Cir. 2014) (holding that a statement by the ALJ appearing "three-single-spaced pages after" a credibility finding, "in a different section," did not support the credibility finding).

Nor do the ALJ's findings with respect to the B criteria constitute substantial evidence for upholding the C-criteria determination. "The paragraph C criteria are an alternative to the paragraph B criteria," used "to evaluate mental disorders that are 'serious and persistent.'" 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(G)(1). The C criteria are based on the recognition "that mental health interventions may control the more obvious symptoms and signs of [the claimant's] mental disorder." *Id.* As such, satisfaction of the C criteria cannot be foreclosed by the ALJ's determination that Bradley's mental symptoms lack the severity required under the B criteria.

The Commissioner also argues that Bradley has not presented evidence showing that she satisfies the C criteria. First, this is an improper post hoc rationalization, as the ALJ did not discuss any medical evidence in her brief discussion of the C criteria. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (stating that federal courts must consider the reasons provided by the ALJ, not the Commissioner's post hoc rationalizations). Second, Bradley has pointed to evidence that could support a finding that she satisfies the C criteria. To satisfy the C criteria, the claimant must show (1) that her mental disorder has existed for at least two years, (2) that she relies "on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs" of the disorder, and (3) despite the diminished symptoms and signs, the claimant has "achieved only marginal adjustment," i.e., she has "minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(G)(2). There is evidence in the record that Bradley's depressive disorder existed in April 2013, *see* **AR 534–37**, that Bradley experienced diminished symptoms of depression and anxiety while living in transitional housing, where she received therapy and support

from a recovery coach, *see* **AR 789**, and that Bradley experienced exacerbated symptoms when faced with a change in her environment, e.g., she attempted suicide by overdose when faced with impending homelessness, *see* **AR 438**, and experienced increased anxiety when faced with the prospect of having to work with a new recovery coach, *see* **AR 779**. At a minimum, whether Bradley satisfies the C criteria is debatable. This ultimately would be a question for the ALJ, as the factfinder, to address on remand. As explained in the following sections, however, this case will be remanded for an immediate award of benefits.

II. **Evaluation of Bradley's Symptom Testimony**

Bradley argues that the ALJ failed to provide legally sufficient reasons for rejecting her mental-symptom testimony. For the following reasons, substantial evidence does not support the ALJ's rejection of Bradley's testimony.

A. **Background**

Bradley has reported that her conditions cause nervousness around strangers, inability to handle stress or changes in routine, "seasonal depression" twice per year on the anniversaries of her husbands' deaths, and increased anxiety twice per month such that she cannot leave the house. **AR 46–49, 264.** The Commissioner says the ALJ offered multiple good reasons for rejecting Bradley's symptom testimony: the objective medical evidence shows that Bradley's symptoms stem from situational stressors, including family, housing, and financial problems, rather than any underlying mental disorder; Bradley's symptoms are inconsistent with her daily activities, including that she received support and resources for job searching and coped with "significant family responsibilities" for several months while her daughter was in rehab; and Bradley's appointments were scheduled infrequently, and her records indicate she was "minimally engaged in services and primarily engaged in medication management." **AR 16–20.**

B. **Legal Principles**

There is a two-step analysis for determining whether to credit a claimant's symptom testimony. *Trevizo*, 871 F.3d at 678. "First, the ALJ must determine whether the claimant

has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison*, 759 F.3d at 1014 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). The claimant need not present objective evidence of the symptom itself (e.g., pain), or of its severity. *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, if "there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* at 1014–15 (quoting *Smolen*, 80 F.3d at 1281). Here, the ALJ found that Bradley had presented evidence of impairments that could reasonably be expected to produce her symptoms; however, the ALJ made no finding that Bradley was malingering. **AR 16.** Therefore, the ALJ could reject Bradley's symptom testimony only for specific, clear, and convincing reasons supported by substantial evidence.

    **C.**    **Analysis**

As an initial matter, the ALJ did not meet the specificity requirement for rejecting a claimant's testimony. The ALJ must both "specifically identify" the symptom testimony in question, and then "explain what evidence undermines the testimony"—"general findings are insufficient." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citations and brackets omitted). The Commissioner points to several places in the record where Bradley reported various specific symptoms of her mental disorders; yet, before summarizing the medical evidence, the ALJ noted general allegations of "an inability to work primarily because of mental health concerns," "struggles with depression," and "a decline in mental capacities that prevented [Bradley] from working." **AR 16.** These general descriptions of Bradley's symptoms and alleged limitations do not adequately embrace the specific problems reported by Bradley, e.g., inability to handle changes in routine. As such, the descriptions were not specific enough to be meaningfully analyzed against Bradley's medical record. *See Treichler*, 775 F.3d at 1102 ("[W]e require the ALJ to specifically identify the testimony . . . she or he finds not to be credible . . . ." (citation and internal quotation marks omitted)).

And to the extent the ALJ mentioned specific symptoms—i.e., stress and anxiety caused by sole responsibility of her granddaughter and the household, a fear of leaving the house, and depression associated with her husbands' deaths—the ALJ failed to connect them to any controverting evidence. This failure to explain how certain items of evidence undermine certain alleged symptoms likewise renders the ALJ's analysis insufficiently specific. *See id.* (requiring the ALJ to "explain what evidence undermines the [specified symptom] testimony"); *Burrell*, 775 F.3d at 1137 (holding ALJ erred in rejecting claimant's testimony, where ALJ failed to link the medical record to specific symptom testimony).

Furthermore, none of the reasons pointed to by the Commissioner are clear and convincing reasons for rejecting Bradley's testimony. The ALJ found that Bradley's symptoms are attributable to environmental stressors (i.e., housing, financial, and family problems) rather than an underlying mental impairment. It is not clear how this fact, if true, undermines any of the specific symptom testimony described above. Moreover, the Ninth Circuit Court of Appeals has emphasized, in discussing mental-health issues, that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. Because it is common for claimants who suffer from such issues to experience "[c]ycles of improvement and debilitating symptoms," reports of improvement must "be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.*

Even assuming the ALJ were correct that Bradley's symptoms wax and wane in accordance with situational stressors, that finding alone is not a sufficient reason for rejecting Bradley's symptom testimony. As the *Garrison* court explained, improved mental functioning "while being treated and while limiting environmental stressors" has no necessary relation to a claimant's ability to "function effectively in the workplace." 759 F.3d at 1017. Thus, finding that Bradley's symptoms are caused by situational stressors is only half of the analysis; the ALJ was also required to explain *why* Bradley could function

effectively in the workplace if her environmental stressors are limited. The ALJ failed to do so. Additionally, the ALJ also failed to explain her implicit finding that Bradley's environmental stressors can be limited, and are not present on a continuing basis. This was not a clear and convincing reason.

Next, the ALJ's scattered references to Bradley's activities of daily living also do not constitute a clear and convincing reason for rejecting Bradley's symptom testimony. An ALJ may rely upon a claimant's daily activities to reject the claimant's symptom testimony if the activities either contradict the symptom testimony or involve skills that could be transferred to the workplace. *Orn*, 495 F.3d at 639. The Ninth Circuit has cautioned against placing undue significance on a claimant's daily activities, since "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations[.]" *Garrison*, 759 F.3d at 1016 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Here, the ALJ cited to notations that Bradley "was able to complete all [activities of daily living] on her own." **AR 18–19, 488, 906.** However, the cited records contain no details about these activities. **AR 488, 906.** As such, the activities do not "constitute an adequately specific conflict with her reported limitations," and there is no basis for finding that the activities involve transferable work skills. *Trevizo*, 871 F.3d at 682. The ALJ also cited records indicating that Bradley babysits her granddaughter frequently and cooks for the household. Yet, the ALJ provided no explanation why these activities translate into the ability to work. *Id.* ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace[.]" (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))). Nor did the ALJ explain how these activities contradict Bradley's reported symptoms. Significantly, there is no contradiction. While the ALJ lauded Bradley for managing the household for several months while her daughter was in rehab, the only details in the record about that period indicate that Bradley was unable to fulfill all household duties. *See* **AR 955** (October 26, 2017 treatment note stating that Bradley was "[a]ble to keep up with care of the baby" but unable to take care of herself or keep the

house clean). Additionally, Bradley reported increased symptoms of depression and anxiety during that period. *See* **AR 47–49** (testifying that she experienced high stress and anxiety during that period), **955** (stating that she felt "like crying all the time," was "so angry," and had "a negative [a]ttitude about everything"). These records are perfectly consistent with Bradley's testimony that she handles stress poorly and is unable to adapt to changes.

The ALJ also seemingly relied on Bradley's attempts to find employment while living in transitional housing. As an initial matter, the rules of the housing program required Bradley to seek employment; the record strongly indicates that Bradley would not have sought employment otherwise. **AR 763.** Bradley showed little motivation to work and committed many violations of the rules requiring her to be diligent in her job search. *See* **AR 885** (February 11, 2016 note stating that Bradley "appears to be very uninterested in completing a job search in general"), **879, 881** (February 12 notes stating that Bradley "appears to be very resistant to following the program rules and looking for employment" and "appears to be rather uniterested [sic] in getting out of bed and being productive), **861** (February 18 note stating that Bradley was found in bed at 9:00 a.m. although she was supposed to be out of the house at 8:00 a.m. and that Bradley reported "trouble getting motivated with fear of leaving the house"), **836** (March 3 note stating that Bradley missed a scheduled therapy appointment and was found in bed sleeping), **815** (March 14 note stating that Bradley "was still on property after being told to go look for work"), **812** (March 15 note stating that Bradley was told to be out of the house by 8:00 a.m. and that Bradley "said shes [sic] not sure she can do that"), **811** (March 15 note stating that Bradley was found back in bed after being told that morning to leave the house by 8:00 a.m.), **795** (March 22 note stating that Bradley was found in bed after being told to start her day), **764** (April 11 note stating that Bradley "appears to lack motivation to get up and look for a job"), **763** (April 13 note stating that the program was inappropriate for Bradley because she "continues to struggle around gaining employment as evidenced by [her] being unemployed, and being in the bed past 8:00 a.m. rather than being on job search").

- 14 -

As these records make clear, Bradley's work attempt is not evidence of improved mental functioning; any suggestion by the ALJ to the contrary was unreasonable. Moreover, as the ALJ noted, Bradley reported during that period "that she needs a job so she can be independent, but is fearful of working due to her medical issues." **AR 905.** An attempt to work is not a clear and convincing reason for rejecting a claimant's symptom testimony where that attempt is the result of "extreme economic necessity." *Lingenfelter*, 504 F.3d at 1038–39. Although the record does not fully support a finding of extreme economic necessity, it does support a finding that Bradley's halfhearted attempts to find employment were a product of the rules requiring her to do so, not of improvement in her mental condition.

Finally, the ALJ cited to records indicating that Bradley's appointments were infrequent and focused on medication management. As an initial matter, although ALJs may evaluate the level or frequency of treatment sought by a claimant, SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017), "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). ALJs may not reject claimant testimony as inconsistent with the level and frequency of treatment "without considering possible reasons he or she may not . . . seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2017 WL 5180304, at *9. Here, the ALJ's decision contains no clear indication that the ALJ "consider[ed] possible reasons" why Bradley did not "seek treatment consistent with the degree of . . . her complaints." *Id.* Notably, Bradley is correct that, after she decompensated and attempted suicide in September 2015, the frequency of her appointments increased from every three months to every five weeks. ***See* AR 497, 500, 503.** The ALJ's omission of this fact from the analysis undermines her conclusion.

The ALJ erred in failing to explain how certain evidence controverts Bradley's specific symptoms. Nor do the general reasons identified by the Commissioner constitute clear and convincing reasons. Therefore, substantial evidence does not support the

1 rejection of Bradley's symptom testimony.

**III.    Remedy**

Bradley requests that the Court remand for an award of benefits because the evidence as a whole supports a finding of disability. The Commissioner argues that, if remand is appropriate, it should be for reevaluation of Bradley's application because there are outstanding issues to resolve. The Court will remand for an immediate award of benefits.

**A.    Legal Principles**

When the ALJ commits reversible error, the court may either remand for reevaluation of the claimant's application or, in some cases, for an immediate award of benefits. *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under the "credit-as-true" rule, federal courts may remand for an award of benefits if three conditions are met. *Id.* (citing *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1400–01 (9th Cir. 1988)). First, courts determine "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* (quoting *Garrison*, 759 F.3d at 1020). Second, courts "determine whether the record has been developed thoroughly and is free of conflicts, ambiguities, or gaps." *Id.* at 1046–47 (citing *Treichler*, 775 F.3d at 1103). "When there are outstanding issues that must be resolved before a determination can be made, or if further administrative proceedings would be useful, a remand is necessary." *Id.* at 1047. Third, courts determine whether, if the improperly rejected evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* at 1045 (citing *Treichler*, 775 F.3d at 1101). If yes, then a direct award of benefits may be appropriate. *Id.* However, even where the credit-as-true rule is satisfied, courts retain the discretion to remand for further proceedings. *Treichler*, 775 F.3d at 1101–02 (quoting *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)).

**B.    Analysis**

The first condition is met because the ALJ failed to provide legally sufficient reasons for rejecting Bradley's symptom testimony. The second condition is also met.

With regard to Bradley's mental conditions, the record is extensive and strikingly consistent. The Commissioner proffers no evidentiary conflict regarding these conditions that requires further evidentiary development. Finally, the third condition is met because, if Bradley's symptom testimony is credited as true, the ALJ would be required to find her disabled. At Bradley's hearing, the VE testified that a person can miss a maximum of eight workdays per year without being terminated. **AR 52–53.** Bradley testified that she suffers from month-long bouts of depression twice per year, during which she stays at home where she has family support. **AR 47.** Bradley also testified that she experiences increased anxiety about leaving the house approximately twice per month. **AR 48–49.** Credited as true, this testimony shows that Bradley would miss more than eight workdays per year and therefore not be able to hold any job in the national economy. There is no "serious doubt" that Bradley is disabled. *Cf. Treichler*, 775 F.3d at 1107 (remanding for further proceedings where the record raised "serious doubt" as to whether the claimant was disabled). Consequently, this case will be remanded for the calculation and award of benefits.[2]

**IT IS ORDERED** that the decision of the Commissioner is **reversed and remanded** for an immediate award of benefits. The Clerk of Court is directed to enter judgment accordingly and close this case.

Dated this 19th day of November, 2019.

_____
Honorable Maria S. Aguilera
United States Magistrate Judge

---

[2] Bradley raises one other issue relating to the ALJ's evaluation of her somatic conditions. Given the Court's findings regarding her mental conditions, review of that issue is unnecessary.